**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| BNSF Railway Company; Matthew Kelly McCauley; and Joel Frederick Briggs, | No. CV-05-0386-PHX-DGC |
| Plaintiffs, | **ORDER** |
| vs. | |
| The Honorable Delbert W. Ray, Sr., et al., | |
| Defendants. | |

The Court held a discovery conference call with the parties on March 2, 2006. All parties were represented. Following 50 minutes of argument, the Court took the matter under advisement. This order will reflect the Court's decision.

On October 5, 2005, the Court entered a Case Management Order ("CMO") that permitted limited discovery in this case. Doc. #69. The Sullivan Defendants sought discovery into "the consensual relationship between Plaintiff and the tribe and the activities of Plaintiff which might have an effect on the political integrity, economic security, or health and welfare of the tribe." *Id.* at 2-3. The Tribal Defendants sought discovery "into all aspects of the underlying tort case and the railroad accident on which it is based." *Id.* at 3. The Court concluded "that some discovery should be permitted, but not to the extent advocated by Defendants." *Id*. at 3. Thus, the Court declined to permit the full scope of discovery sought by both the Sullivan Defendants and the Tribal Defendants.

1    Instead, the Court permitted limited discovery into three specific topics: (1) "the
2    nature and extent of Plaintiff's right-of-way across the tribe's land," (2) "the nature, terms,
3    and duration of any contracts or agreements between the railroad and the tribe," and (3) "the
4    number of trains and cars crossing the reservation daily and yearly, the general contents of
5    the cars, the general nature of any hazardous materials contained in the cars, the frequency
6    of accidents or pollution occurring as a result of the railroad's activity on tribal lands, and
7    similar information related to the potential impact of the railroad on the tribe." *Id.* at 3-4.
8    The Court permitted Rule 30(b)(6) depositions on these subjects.

9    The intent of the CMO was to permit limited discovery on limited subjects. The Ninth
10   Circuit has explained that a case such as this "does not require that the district court permit
11   wholesale discovery. Rather, the district court may tailor limited discovery before . . .
12   entertaining a motion for summary judgment." *Burlington Northern Santa Fe Railroad*
13   *Corp. v. Fort Peck*, 323 F.3d 767, 775 (9th Cir. 2003).

14   As became clear during the discovery conference call and from the Court's review of
15   the record, Defendants have served Rule 30(b)(6) deposition notices that substantially exceed
16   the scope of discovery permitted by the CMO. *See* Docs. ##71, 72, 73, 76, 77, and 78. The
17   intent of the CMO was to permit limited discovery into general subjects. For example, with
18   respect to the impact of the railroad on the tribe, the CMO clearly stated that Defendants
19   could inquire into the "general nature" of any hazardous materials contained in the cars and
20   the "frequency" of accidents or pollution occurring on tribal lands. The CMO stated that
21   "similar information related to the potential impact of the railroad on the tribe" could be
22   obtained, but this was intended to mean similarly general information. The Defendants'
23   mutli-page deposition notices inquire into numerous subjects in considerably greater detail
24   than the CMO contemplated. They call for the railroad to produce a witness who can testify
25   about "all hazardous materials" that have ever been transported across the tribal lands,
26   including "each of the types of materials, quantity of materials, cars per year, type of
27   container cars, and speed of travel." Doc. #71 at 5. The notice seeks a witness on the impact
28   on adjoining properties and human-beings if any of these materials were to be spilled or catch

1    fire, the history of all hazardous materials that have been spilled, all environmental audits

2    performed by the railroad on tribal lands, all future contemplated audits, railroad policies

3    concerning environmental audits, insurance, risk management, and other financial reserves

4    and resources available for environmental spills or releases, and the nature and extent of all

5    physical injuries to individuals, property damages, and environmental damages sustained as

6    a result of the release of hazardous materials in a 1985 derailment of a train on the

7    reservation.  *Id*. at 6-7.

8         These requests plainly go beyond the limited discovery contemplated by the CMO.

9    Defendants' other notices also exceed the scope of the CMO.  The Sullivan Defendants'

10   notice on contract issues (Doc. #72) contains 33 numbered categories of possible inquiry,

11   including detailed information about specific contracts, their negotiation, amendment, and

12   current status, correspondence relating to all contracts, complaints or concerns regarding

13   crossings, any accident at a crossing, all legal actions between the railroad and the tribe, all

14   studies, reports, or investigations concerning any aspect of the investigation between the

15   railroad and the tribe, water rights, lawsuits, and future plans of the railroad.  Such inquiries

16   far exceed the limited discovery permitted by the CMO into the "contractual relationship

17   between 'the railroad and the tribe.'"  Doc. #69 at 3.

18        On January 31, 2006, counsel for the railroad wrote to counsel for the Sullivan

19   Defendants (no deposition notices had been served by the Tribe at that time) and complained

20   about the breadth of the deposition notices.  The letter noted that the CMO was limited in the

21   discovery permitted, that no discovery had been attempted by Defendants during the three

22   months following entry of the CMO, that the notices included 91 different categories of

23   information for the three depositions, and that the notices clearly exceeded the CMO.  In

24   response, defense counsel conferred with counsel for the railroad but declined to limit the

25   notices.  Rather, defense counsel suggested that the railroad produce its most knowledgeable

26   witnesses, that the depositions go forward, and that the parties then decide whether a dispute

27   exists.  Defendants were satisfied with the railroad's witness on the first subject permitted

28   in the CMO – the nature and extent of the railroad's right-of-way across tribal lands – but

1    found the contract witness to be inadequate because he could only identify the existence of

2    contracts, not discuss them in detail.  The railroad apparently produced no witness on the

3    third topic.  As a result, the parties placed the discovery conference call to the Court.

4           During the conference call, counsel for the railroad noted that the railroad had

5    searched for all contracts that might be involved in the 36-mile stretch of railway across tribal

6    lands.  Documents were sought not only in the railroad's files and its real estate system, but

7    also from third party contractors.  568 pages, comprising more than 40 contracts, were

8    produced.  The railroad produced all valuation maps, corporation maps, documents regarding

9    the donation of land to the tribe, tax dispute documents, engineering inventories (which

10   included lists of all lubricants), 40 pages on herbicides used on the tracks, engineering maps

11   showing each track, bridge, and crossing, timetables and speeds for trains crossing tribal

12   lands, track maps, all claims regarding livestock damage, personal injury, and property

13   damage, and an 1879 map concerning the location of the railroad.  The contract witness

14   produced at the deposition was the individual at the railroad familiar with the location of all

15   contracts, but the railroad protests that no witness can testify, for example, about the

16   negotiation of a 1920 license agreement.  Following the conference, counsel for the Sullivan

17   Defendants sent the Court a copy of the deposition transcript, noting that the witness had

18   responded "I don't know" more than 130 times.

19          The Court concludes that Defendants have misunderstood the limited nature of

20   discovery permitted by the CMO.  The intent of that order was to permit limited discovery

21   into general topics that would enable the parties to address application of the *Montana* factors

22   in this case.  Consistent with Ninth Circuit precedent, the Court concluded that only limited

23   discovery of a general nature would be necessary for the Court to resolve the legal questions

24   presented by this case.

25          The Court concludes that the railroad's responses on the first and second subjects in

26   the CMO – the nature and extent of the railroad's right-of-way and the nature, terms, and

27   duration of any contracts or agreements between the railroad and the tribe – have been

28   sufficiently addressed in the discovery conducted to date.

1    With respect to the third subject, the Court will permit a Rule 30(b)(6) deposition

2    consistent with the narrow intent of the CMO.  The parties are directed to confer on the

3    appropriate scope of the 30(b)(6) deposition and to complete the deposition before **April 7,**

4    **2006**.  If the parties are unable to agree on a limited scope of the deposition, they are directed

5    to place another conference call to the Court in time to resolve all issues and complete the

6    deposition before April 7, 2006.  Defendants shall take responsibility for scheduling and

7    initiating discussions on the limited deposition.

8    In light of this change in the discovery schedule, the deadline for filing dispositive

9    motions shall be extended to **April 28, 2006**.  All other terms of the CMO shall remain in

10   effect.

11   DATED this 6th day of March, 2006.

12

13

14

15   _____

16   David G. Campbell
     United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

- 5 -